## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY DARR, | ) | CASE NO. 1:19-cv-2068 |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| CHRISTOPHER LaROSE, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Timothy Darr (Petitioner or Darr), challenges the constitutionality of his convictions for trafficking in cocaine, possession of cocaine, and improperly carrying a firearm in the case of *State v. Darr*, Medina County Court of Common Pleas Case No. 16-CR-0277. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Warden Christopher LaRose (Respondent) has filed an Answer/Return of Writ. (R. 11). Petitioner has not filed a Traverse. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court

factual findings are presumed correct unless rebutted by clear and convincing evidence."). The

Ninth District Court of Appeals (state appellate court), on an appeal, summarized the facts

underlying Petitioner's convictions as follows:

> [*P2] This matter arises out of Darr's arrest in the early morning hours of May 7, 2016. Law enforcement purportedly initiated the stop of Darr's vehicle pursuant to an outstanding arrest warrant. When the officers took Darr into custody, they discovered a significant amount of cocaine on his person. The officers also discovered a loaded handgun in the glove compartment as well as ammunition for the gun in the backseat of the vehicle.

> [*P3] On May 19, 2016, the Medina County grand jury indicted Darr on one count of trafficking in cocaine, one count of possession of cocaine, and one count of improperly handling firearms in a motor vehicle, in addition to a firearm specification and two forfeiture specifications. Darr initially pleaded not guilty to the charges.

> [*P4] Darr filed a motion to suppress challenging whether law enforcement had obtained the arrest warrant prior to initiating the stop of his vehicle. After holding a suppression hearing, the trial court issued an order denying the motion to suppress on October 25, 2016.

> [*P5] The matter proceeded to a jury trial where Darr was found guilty of all the charges in the indictment. The trial court found that the counts of trafficking in cocaine and possession of cocaine were allied offense[s] of similar import. The State elected for the trial court to impose sentence on the possession charge. The trial court ultimately imposed an aggregate prison sentence of ten years.

*State v. Darr*, 2018-Ohio-2548, 2018 WL 3212299 (Ohio Ct. App. Jun. 29, 2018).

## II. Procedural History

### A.   Conviction

On May 19, 2016, a Medina County Grand Jury indicted Darr on one count of cocaine

trafficking in violation of Ohio Revised Code (O.R.C.) § 2925.03(A)(2)(C)(4)(f); one count of

cocaine possession in violation of O.R.C. § 2925.11(A)(C)(4)(e); and one count of improperly

handling firearms in a motor vehicle in violation of O.R.C. § 2923.16(B). (R. 11-1, PageID# 61-

63; Exh. 1). The improperly handling firearms in a motor vehicle contained a firearm

specification and two forfeiture specifications. *Id*. Darr, through counsel, entered a plea of not guilty. (R. 11-1, PageID# 64; Exh. 2).

On September 8, 2016, Darr, through counsel, filed a motion to suppress arguing that the arrest warrant was not actually issued until two days after he was arrested. (R. 11-1, PageID# 65-78; Exh. 3). Darr's motion acknowledged that the state court judge had ordered a capias to be issued, and that "[h]ad there actually been an arrest warrant issued for Mr. Darr, the stop would have been perfectly legal." *Id*. at PageID# 68. The trial court held a suppression hearing on October 20, 2016. (R. 11-1, PageID# 79-82; Exh. 4). Thereafter, on October 25, 2016, the trial court issued a journal entry indicating that it was denying the motion, as it had been provided with a certified copy of the warrant showing that it was attested to having been issued the day before Darr's arrest. *Id*.

On November 29, 2016, after a jury trial, Darr was found guilty as charged. (R. 11-1, PageID# 83-88; Exhs. 5 & 6). On December 22, 2016, Darr was ordered to serve an aggregate sentence of ten years.[1] (R. 11-1, PageID# 89-91; Exh. 7).

**B.  Direct Appeal**

On January 23, 2017, Darr, through counsel, filed a Notice of Appeal. (R. 11-1, PageID# 92; Exh. 8). Counsel set forth the following assignments of error:

1.  The court erred by not suppressing all statements and physical evidence as the result of a warrantless stop and arrest.

2.  The court committed plain error by failing to stop the hearsay and redirect testimony of Deputy Stevanus.

---

[1] The trial court determined that Counts I and II—the cocaine trafficking and possession convictions—were allied offenses of similar import. The State elected to have Darr sentenced on the possession conviction, for which Darr received nine years in prison. (R. 11-1, PageID# 90; Exh. 7). The additional year in the aggregate ten-year term stems from the mandatory one-year sentence for the firearm specification. *Id*.

3.      Counsel for the defendant was ineffective for failing to object to the improper redirect and hearsay evidence in assignment of error two.

4.      The conviction for improper handling and the firearm specification were against the manifest weight of the evidence.

5.      The convictions for bulk cocaine possession and trafficking were insufficient under the Gonzales standard that should have been applied in this case.

(R. 11-1, PageID# 97-109; Exh. 9). On June 29, 2018, the state appellate court affirmed the judgment of the trial court. (R. 11-1, PageID# 139-154; Exh. 13).

On August 10, 2018, Darr, *pro se*, filed an appeal with the Ohio Supreme Court. (R. 11-1, PageID# 155; Exh. 14). In his memorandum in support of jurisdiction, Darr asserted the following propositions of law:

I.      Did the court err by not suppressing all statements and physical evidence as the result of a warrantless stop and arrest?

II.     Did the Court commit plain error by failing to stop the hearsay and redirected testimony of Deputy Stevanus?

III.    Was counsel for the defendant ineffective for not objecting to the hearsay and redirect testimony of Deputy Stevanus when he testified about a bullet allegedly found in the shirt of the defendant by another officer in another county at another jail?

(R. 11-1, PageID# 157-182; Exh. 15). On October 24, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.C.Prac.R. 7.08(B)(4). (R. 11-1, PageID# 183; Exh. 16).

## C.      Federal Habeas Petition

Darr, *pro se*, filed a Petition for Writ of Habeas Corpus. Petitioner raises the following grounds for relief:

**GROUND ONE**: 4th Amendment Rights Denied.

*Supporting Facts*: The court unlawfully admitted hearsay statements from a warrantless stop & arrest.

**GROUND TWO**: 4th, 5th, 6th Amendment Rights.

*Supporting Facts*: Court failed to stop hearsay from Deputy Stevanus.

**GROUND THREE**: 6th Amendment.

*Supporting Facts*: Ineffective assistance of counsel. Counsel did not object of statements of Stevanus.

(R. 1, PageID# 5-8).

### III. Exhaustion and Procedural Default

#### A. Exhaustion Standard

State prisoners must exhaust their state remedies before raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

#### B. Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court, a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief that are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."

*Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough, however, as a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.).

**C. Application to the Present Petition**

In his second ground for relief, Petitioner asserts his 4th, 5th, and 6th Amendment Rights were violated when the trial court failed to stop or strike allegedly hearsay testimony from Deputy Stevanus. (R. 1, PageID# 7). Respondent asserts that the defense failed to object at trial to the testimony with which petitioner now takes issue. (R. 11, PageID# 44-53). Therefore, Respondent argues, Petitioner has defaulted his second ground for failing to make a contemporaneous objection, noting that the state courts enforced the lack of an objection by reviewing for only plain error.[2] *Id.* Respondent further asserts that even if there was error, any

---

[2] *See e.g., State v. Murphy*, 2001-Ohio-112, 747 N.E.2d 765 (Ohio 2001) ("The waiver rule requires that a party make a contemporaneous objection to alleged trial error in order to preserve

error was harmless. *Id*.

The state appellate court addressed Petitioner's argument in conjunction with his third assignment of error that trial counsel was ineffective for failing to object to the same testimony of Deputy Stevanus—the latter is the subject of Petitioner's third ground for relief in the present habeas petition. The state appellate court stated:

> [*P17] In his second assignment of error, Darr contends that the trial court committed plain error when it failed to sua sponte strike Deputy Stevanus's testimony on re-direct examination regarding a bullet found on Darr's person during the booking process. In his third assignment of error, Darr contends that trial counsel rendered ineffective assistance by failing to object to the same testimony.

> [*P18] A review of the trial transcript reveals that the State presented evidence that supported the following narrative. Prior to stopping Darr's vehicle in the early morning hours of May 7, 2016, Deputy Stevanus called on Deputy Taylor, and his field training officer, Deputy Brooks, to provide backup. Deputy Stevanus and Deputy Brooks approached the vehicle and took Darr into custody. When Deputy Taylor conducted a patdown of Darr's person, Deputy Taylor discovered cash in the amount of $930, a check for $750, a lighter, and a digital scale that contained "a white powder residue." Deputy Taylor also discovered a large bag containing a white powdery substance, as well as smaller bag containing the same substance. Deputy Taylor testified that during the pat-down, Darr identified the white powdery substance as cocaine.

> [*P19] When Darr was secured in the back of a cruiser, the officers proceeded to conduct an inventory search of Darr's vehicle. The officers found a Red Bull can that contained a false compartment that can be used "for concealing contraband, narcotics, [and] money[.]" The officers further found a broken pipe, a hypodermic needle, and a torch lighter. **Finally, the officers located a loaded handgun locked in the glove compartment, as well as a bag containing loose bullets and another magazine on the floor of the backseat. The ammunition found on the floor of the backseat was compatible with the firearm found in the glove compartment, which was a .40 caliber Smith & Wesson semi-automatic handgun**.

> [*P20] The State presented the aforementioned evidence prior to Deputy Stevanus testifying at trial. Deputy Stevanus indicated on direct examination that he spoke

that error for appellate review. The rule is of long standing, and it goes to the heart of an adversary system of justice.")

with Darr at the scene of the arrest. With respect to the gun found in the glove compartment, Darr admitted that he knew about the gun but he denied that he was the owner. Darr insisted that the gun belonged to his brother's girlfriend. On cross-examination, Deputy Stevanus clarified that Darr asked for a description of the gun before he identified it as belonging to his brother's girlfriend. Darr explained that his brother had used the gun to go shooting the previous day. Deputy Stevanus further explained on cross-examination that the car was owned by Darr's mother and was used by both Darr and his brother. On re-direct examination, Deputy Stevanus was asked if law enforcement found any additional evidence on Darr after he was turned over to the Lorain County Sheriff's Office. Deputy Stevanus responded, "They located a .40 caliber bullet round in his shirt sleeve."

**Plain Error**

[*P21] Darr contends that the trial court committed plain error by failing to strike the statement regarding the .40 caliber round discovered in his shirt sleeve during the booking process. Darr contends the statement was hearsay and went beyond the scope of proper re-direct examination. Darr further argues that the testimony invited a litany of speculation about how the bullet was discovered and merited an opportunity for further questioning.

[*P22] Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767, 658 N.E.2d 16 (9th Dist. 1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶12. "Plain error exists only where it is clear that the verdict would have been otherwise but for the error." *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶52, 819 N.E.2d 215, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

[*P23] Darr's plain error argument is without merit. "We will not reverse for plain error unless the appellant established that the outcome of the trial clearly would have been different but for the alleged error." *State v. Kobelka*, 9th Dist. Lorain No. 01CA007808, 2001-Ohio-1723, 2001 Ohio App. LEXIS 4951, *5 (Nov. 7, 2001), citing *State v. Waddell*, 75 Ohio St.3d 163, 166, 1996- Ohio 100, 661 N.E.2d 1043 (1996). Even assuming without deciding that Deputy Stevanus's testimony was improper, Darr has not demonstrated that the outcome of trial would have been different if the trial court had stricken the testimony. The testimony offered by Deputy Stevanus on re-direct examination had no bearing on Darr's convictions for trafficking in cocaine and possession of cocaine. With respect to the firearm charge and the attendant specification, the State presented

evidence showing that the ammunition in the backseat was compatible with the gun found in the vehicle. The State also presented evidence that Darr admitted to knowing about the weapon in the glove compartment, although he denied that it belonged to him. Under these circumstances, Darr has not demonstrated that the result of the trial clearly would have been different had the trial court stricken Deputy Stevanus's testimony about the .40 round discovered on Darr's person during the booking process.

*Darr*, 2018-Ohio-2548 at ¶¶17-23 (emphasis added).

It is well established that "Ohio's contemporaneous objection rule is an adequate and independent state ground for barring habeas relief and that plain error review constitutes enforcement of the contemporaneous objection rule…." *Neil v. Forshey*, No. 20-3491, 2020 WL 6498732, 2020 U.S. App. LEXIS 34461, at *12 (6th Cir. Oct. 30, 2020) (further finding that "reasonable jurists would not disagree with the district court's determination that [a] claim was procedurally defaulted" based on the contemporaneous objection rule.") (citing *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011)).

Further, controlling precedent in the Sixth Circuit demonstrates an Ohio court's "plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue for [a petitioner]." *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006); *accord McNeill v. Bagley*, No. 1:02 CV 1645, 2019 U.S. Dist. LEXIS 144592, at *89 (N.D. Ohio Aug. 26, 2019) (Polster, J.). Here, the state appellate court invoked the plain error review and set forth Ohio's standards for such review. The court did not address the merits of the claim, and only assumed the testimony was improper for the sake of argument. Consequently, the state courts actually enforced the state procedural rule against Darr by reviewing only under the plain error standard. Consequently, the second ground for relief has been procedurally defaulted.

Because Petitioner has procedurally defaulted his second ground for relief, he may only avoid the default if he can demonstrate both cause *and* prejudice for his default. Petitioner,

however, has failed to argue either cause or prejudice. "Cause," which requires "something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. *See also Franklin*, 434 F.3d at 417; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). Even if the court were to assume Petitioner would assert trial counsel's ineffectiveness as cause, that argument is without merit as explained in the ground three analysis below. Further, Petitioner must also show prejudice. As clearly and persuasively explained by the state appellate court, the testimony regarding the bullet found on Darr's person was wholly irrelevant to his cocaine trafficking and possession convictions. As for the firearm charge and the corresponding specification, the court observed that the single bullet was not prejudicial because it was cumulative to testimony already admitted that loose bullets and another gun magazine were found in Darr's car that were compatible with the firearm found in the glove compartment. *Darr*, 2018-Ohio-2548 at ¶¶19, 23. Thus, prejudice is plainly lacking to excuse Darr's default.

Petitioner also cannot show that he is actually innocent, as he has not presented this court with any new and reliable evidence (*i.e.* exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial) that could satisfy the aforementioned *Schlup* standard. Therefore, it is recommended that ground two of the petition be dismissed as procedurally defaulted. In the interests of judicial economy, the defaulted claims will not be addressed on the merits.

## IV.  Review on the Merits

### A.  Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court

13

identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**B.   Ground One: Motion to Suppress**

In his first ground for relief, Petitioner asserts the trial court erred by admitting testimony from an allegedly warrantless stop and search. (R. 1, PageID# 5). Respondent argues that ground one fails to state a cognizable ground for federal habeas relief, as Petitioner was afforded an opportunity to fully and fairly litigate his Fourth Amendment claims under *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). (R. 11, PageID# 40-43).

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See Stone*, 428 U.S. at 494 (1976); *Wallace v. Kato*, 549 U.S. 384, 395 n. 5, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *accord In re Irby*, No. 19-3584, 2019 U.S. App. LEXIS 38722, at *4-5 (6th Cir. Dec. 30, 2019) (asserting "long standing precedent renders such [exclusionary rule] claims non-cognizable on collateral review where the prisoner had 'full

and fair' opportunity to litigate the 'Fourth Amendment claim' on direct review."); *Ewing v. Ludwick*, 134 Fed. Appx. 907, 911 (6th Cir. 2005). The Sixth Circuit has found that:

> In order to determine whether a petitioner received a "full and fair" opportunity to litigate a Fourth Amendment claim, we apply a two-part test. First, we "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim[,]" and second, we "must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). In performing this analysis, we do not review the "correctness" of the state court decision. *Id*.

*Fulcher v. Logan Cty. Circuit Court*, 459 Fed. App'x 516, 521 (6th Cir. 2012).

As set forth in the aforementioned procedural history, Darr's defense counsel filed a motion to suppress and the trial court held a suppression hearing. (R. 11-1, PageID# 65-82; Exhs. 3 & 4). Subsequently, the trial court explained in a judgment entry its basis for denying the motion to suppress. (R. 11-1, PageID# 79-82; Exh. 4). Petitioner has not identified any irregularity in this proceeding.

In addition, after Darr's appellate counsel raised the issue on direct appeal, the state appellate court conducted a thorough analysis, and found no error in the trial court's denial of the motion to suppress. (R. 11-1, Exh. 13). The state appellate court explained:

> [*P7] In his first assignment of error, Darr contends that the trial court erred in denying his motion to suppress. This Court disagrees.

> [*P8] A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, 797 N.E.2d 71. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997).

15

**Background**

[*P9] In the motion to suppress, Darr challenged the legality of the traffic stop and his eventual arrest. Darr argued that the stop of his vehicle on May 7, 2016, was not made pursuant to a warrant. Specifically, Darr argued that law enforcement officials did not obtain a valid arrest warrant until several days after Darr was arrested. Darr acknowledged that "[h]ad there actually been an arrest warrant issued for [him], the stop would have been perfectly legal." Darr insisted, however, that the arrest warrant was not actually issued until May 9, 2016. Darr attached multiple exhibits to his motion, including a journal entry showing that a judge had ordered the issuance of a capias on May 6, 2016, at 2:27 P.M., as well as an alert from the Lorain County Sheriff's Office indicating that Darr was known for running from the authorities and that he had pulled a handgun on a state trooper. In support of his central position, Darr pointed to a printout of the online docket from his case in Lorain County that indicated the capias was not actually issued until May 9, 2016.

[*P10] The trial court held a suppression hearing on October 20, 2016. The only witness to testify at the hearing was Deputy Stevanus, a patrol deputy for the Medina County Sheriff's Office. As he started his shift at approximately 10:00 p.m. on May 6, 2016, Deputy Stevanus learned that a "faxed copy" of an arrest warrant for Darr had been sent from Lorain County. Because there was a warning suggesting that Darr was in possession of a firearm, Deputy Stevanus conferred with his sergeant regarding whether it would be prudent to serve the warrant that night. They decided against going to Darr's apartment for officer safety reasons and, instead, to let the day shift attempt to serve the warrant.

[*P11] Deputy Stevanus made a point to keep an eye on the area where Darr lived while he was on patrol. After midnight, Deputy Stevanus noticed a silver Cadillac leave Darr's residence. The vehicle was linked to Darr. Deputy Stevanus testified that he ran a LEADS search which showed an arrest warrant for Darr out of Lorain County. Deputy Stevanus followed the vehicle and eventually initiated a traffic stop in Litchfield. Darr was identified as the driver of the vehicle and placed under arrest. Deputy Stevanus transferred custody of Darr to the Lorain County Sheriff's Department at the scene of the stop.

[*P12] The State introduced a certified copy of the arrest warrant as an exhibit at the hearing. The document did not bear a time stamp but it did contain an attestation indicating it is a true copy of the original on file with the Lorain County Clerk of Court. While the date of "5/10/16" was handwritten on front of the warrant, the Sheriff's Return on the back stated, "Received this Writ on May 6, 2016, and pursuant to its command I did, on May 7, 2016 execute[] it by arresting TIMOTHY J DARR and now have his/her body before the Court." The Sheriff's Return was signed by Deputy Yusko. During his testimony, Deputy

16

Stevanus identified the "Caution/Wanted Subject" sheet indicating that Darr had previously pulled a handgun on a state trooper and that his vehicle may contain a rifle. Deputy Stevanus indicated that the sheet had a copy of the arrest warrant attached to it when it was faxed from Lorain on the evening of May 6, 2016. Though Deputy Stevanus testified that he had seen the capias that evening, he acknowledged that the language of his report stated only that he had been "made aware" of the capias. When pressed, Deputy Stevanus testified that he was "absolutely positive [he] saw an actual capias[.]" While the online docket printout attached to Darr's motion showed the capias being issued on May 9, 2016, a subsequent online docket printout that was introduced at the hearing showed that the capias was issued on May 6, 2016.

[*P13] In its journal entry denying the motion to suppress, the trial court determined that the documents submitted by the State were consistent with Deputy Stevanus's testimony that the warrant was issued and faxed to Medina on May 6, 2016. In light of the certified documents and Deputy Stevanus's testimony, the trial court concluded that the warrant was issued prior to Darr's arrest. The trial court further noted that the online docket printout suggesting the warrant was not issued until May 9, 2016 contained a "clerical error" and that the subsequent printout corrected that clerical error.

## Discussion

[*P14] On appeal, Darr argues that the State failed to meet its burden at the hearing of demonstrating that the warrant was issued prior to his arrest. Darr maintains that because the burden was on the State, the trial court should have ruled in his favor given that there were "two competing dates on valid court documents[.]"

[*P15] Darr's argument is without merit. At the suppression hearing, the trial court heard testimony from Deputy Stevanus and took note of the "competing Dates" on the exhibits presented by the parties. Deputy Stevanus was adamant during his testimony that he saw a faxed copy of the arrest warrant for Darr on the evening of May 6, 2016. While the arrest warrant was not time stamped, the Sheriff's Return on the arrest warrant indicated that it was received on May 6, 2016, and executed on May 7, 2016. Though Darr suggests that the existence of competing evidence should have allowed him to prevail on his motion, it is well settled that the trial court is in the best position to resolve factual disputes that arise at a suppression hearing. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8, 797 N.E.2d 71. Moreover, this Court will not substitute its own judgment for that of the trial court regarding the weight given to Deputy Stevanus's testimony. *State v. Rogers*, 9th Dist. Wayne, 2017-Ohio-357, ¶11, 83 N.E.3d 238, citing *State v. Thayer*, 9th Dist. Medina No. 11CA0045-M, 2012-Ohio-3301, ¶41. Under these circumstances, the trial court did not err in determining that the arrest warrant was issued prior to

Darr's arrest.

[*P16] The first assignment of error is overruled.

*Darr*, 2018-Ohio-2548 at ¶¶7-16.

The petition fails to draw this court's attention to anything in the state court record suggesting Darr's ability to present his claims was frustrated through a failure of Ohio's review process. (R. 1). Petitioner also did not file a traverse in response to Respondent's Answer/Return of Writ. As stated above, a federal habeas court does *not* review the "correctness" of the state court decision. *Fulcher*, 459 Fed. App'x at 521.

The Sixth Circuit Court of Appeals has clarified that "the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, *not an inquiry into the adequacy of the procedure actually used to resolve that particular claim*." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013) (emphasis added). Therefore, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.* In sum, the Sixth Circuit explained that, in considering whether a habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, "[o]ur approach, and the majority rule, asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640; *accord Harrington v. Warden, London Correctional Inst.*, 2013 U.S. Dist. LEXIS 158363 at *11, 2013 WL 5944193 at * 4 (S.D. Ohio Nov. 5, 2013).

The facts presented demonstrate that the trial court conducted a suppression hearing, heard argument from defense counsel and the prosecution, and provided an explanation as to why Darr's motion was denied. The state appellate court conducted a thoughtful analysis of the

issues raised. Petitioner's mere disagreement with the outcome of the hearing or the state appellate court's resolution of the issue fails to state a claim for federal habeas corpus relief, as the Sixth Circuit has made clear that a state court "need do no more than 'take cognizance of the constitutional claim and rule in light thereof.'" *Riley*, 674 F.2d at 525 (quoting *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977)); *Good*, 729 F.3d at 640. The *Good* court concluded, "[a]pplying our test to [petitioner's] case is straightforward. [Petitioner] could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court rejected it once more. That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*." *Good*, 729 F.3d at 640; *cf. Putrus v. Smith*, 2013 U.S. Dist. LEXIS 164923 (E.D. Mich. Nov. 20, 2013) ("[T]he relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim 'is simply irrelevant.'") (citations omitted).

In the case at bar, Darr raised his Fourth Amendment claim before both the state trial and appellate courts. Petitioner has not identified any evidence or irregularity to rebut the presumption that the procedure utilized was fair. Because Petitioner faced no obstacle or impediment in his ability to utilize the state courts' review process to pursue his Fourth Amendment claim, his first ground for relief is not cognizable. *See, e.g., Brown v. Kowalski*, No. 18-1767, 2018 U.S. App. LEXIS 37243, at *4 (6th Cir. Oct. 11, 2018) (finding that reasonable jurists could not disagree with the district court's decision that a petitioner's "claim challenging the search of his vehicle could not be raised in a federal habeas corpus petition because the claim

19

was considered by the state courts"). Therefore, Petitioner's first ground for relief fails to present a cognizable claim.

**C. Ground Three: Ineffective Assistance of Trial Counsel**

In his third ground for relief, Petitioner asserts that trial counsel was ineffective for not objecting to portions of Deputy Stevanus's testimony. (R. 1). Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012); *Joshua v. DeWitt*, 341 F.3d 430, 437 (6th Cir. 2003) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The Sixth Circuit discussed the general standard for ineffective assistance of counsel in *Monzo v. Edwards*:

> To establish ineffective assistance of counsel under *Strickland*, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant. Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted); *see generally Strickland v. Washington*, 466 U.S. 668, 689 (1984)*.

A habeas court must approach the state court's rulings in a highly deferential manner. The Supreme Court stated that the "pivotal question" of whether the state court's application of *Strickland* standard was unreasonable is different from simply deciding whether counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The focus on habeas review is "not whether counsel's actions were reasonable," rather, the question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s

20

deferential standard." *Id.* at 105. The Court in *Richter* instructed that the petitioner must show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." 562 U.S. at 103; *see also Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc), *cert. denied*, 566 U.S. 991 (2012). The Supreme Court acknowledged that, under the AEDPA, this standard was "difficult to meet," however, it was "meant to be" so. *Id.* at 102; *see also Montgomery*, 654 F.3d at 676.

As stated above, the state appellate court addressed Darr's ineffective assistance of counsel claim in conjunction with Darr's claim that the trial court should have *sua sponte* stopped Deputy Stevanus from testifying with respect to a bullet found in Darr's shirt sleeve during booking. After setting forth the facts, quoted above in this report and recommendation when addressing ground two, the state appellate court addressed Darr's claim as follows:

> [*P24] In support of his ineffective assistance claim, Darr renews his position regarding the problematic nature of Deputy Stevanus's testimony on re-direct examination and argues that trial counsel rendered ineffective assistance by failing to object. Darr maintains that the bullet in his shirt was the strongest piece of evidence linking him to the gun, particularly given that the ammunition and the gun were not found on his person.

> [*P25] In order to prevail on a claim of ineffective assistance of counsel, Darr must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674, 1998-Ohio-171, 687 N.E.2d 1358 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Darr must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534, 1997-Ohio-367, 684 N.E.2d 47 (1997), citing *Strickland* at 687. Second, Darr must demonstrate that but for counsel's errors,

there is a reasonable probability that the results of the trial would have been different. *Keith* at 534.

[*P26] Darr has failed to demonstrate that there is a reasonable probability that the result of trial would have been different but for trial counsel's failure to object. Though Darr suggests that the .40 caliber round found in his shirt sleeve was the strongest piece of evidence linking him to the gun, we note that the ammunition found on the floor of the backseat was also compatible with the gun. More significantly, Darr admitted to Officer Stevanus that he knew about the gun in the glove compartment. Thus, we cannot accept Darr's contention that there is a reasonable probability that the result of trial would have been different if trial counsel had objected to Deputy Stevanus's testimony on re-direct examination.

*Darr*, 2018-Ohio-2548 at ¶¶24-26.

Where, as here, the state appellate court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance of counsel claim, its ruling must constitute an unreasonable application of the *Strickland* standard in order for the petitioner to receive habeas relief. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal quotation marks omitted).

Given the highly deferential standard with which this court must address a state court's determination of an ineffective assistance of counsel claim, this court cannot find that the state court's application of the *Strickland* test, in this case the prejudice prong, was an unreasonable application of the standard. Here, the state appellate court's decision rests on its determination under the *Strickland* test's second prong, as it concluded that defense counsel's performance, even if assumed deficient for failing to object to the challenged testimony, did not result in prejudice. The state court set forth the facts of this case and reasonably determined that the testimony regarding the bullet found on Darr's person was wholly irrelevant to his cocaine

trafficking and possession convictions. As for the firearm charge and the corresponding specification, the state appellate court thoroughly and reasonably explained that the single bullet found in Darr's shirt was not prejudicial because it was cumulative to testimony already admitted that loose bullets and another gun magazine were found in Darr's car that were compatible with the firearm found in the glove compartment. Further, as the court noted, Darr admitted that he was aware of the gun located in the vehicle's glove compartment. The court finds no issue with the state appellate court's completely reasonable determination that the counsel's decision not to object to said testimony did not prejudice Petitioner. Therefore, the court recommends denying ground three as without merit.

### IV. Conclusion

For the foregoing reasons, it is recommended that Darr's Petition be DENIED.

/s/ David A. Ruiz_____
U.S. MAGISTRATE JUDGE

Date: April 13, 2021

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**